# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

_____
                                   )
In re:                             )
                                   )     Chapter 7
MICHAEL G. FURLONG and             )     Case No. 06-42851-HJB
JOANN FURLONG,                     )
                                   )
            Debtors                )
_____)


## MEMORANDUM OF DECISION

Before the Court is the "Debtors' Motion to Verify or Compel Abandonment of Certain Property of the Estate" (the "Motion to Verify").  Andrew C. Donarumo ("Donarumo") opposes and has filed his own "Cross-Motion for Entry of An Order Determining that (A) the Claims Were Not Abandoned, and (B) Any Assignment of the Claims is Void" (the "Cross-Motion").  Although the briefing and court argument outlined relatively complex facts and multiple legal theories, the question at the heart of the arguments is relatively simple: what, if anything, was abandoned by the Chapter 7 trustee in 2007 and, if property of the estate was abandoned, what are the implications of that abandonment?

I.    FACTS AND TRAVEL OF THE CASE

In January of 2005, the debtors, Michael and JoAnn Furlong (the "Furlongs")

purchased the assets of Donarumo Plumbing & Heating, Inc. ("Donarumo Plumbing") from Donarumo for the sum of $1 million and formed Drew's Plumbing & Heating II, Inc. ("Drew's Plumbing") in order to operate the business. For reasons that are heavily contested by the parties,[1] the Drew's Plumbing business was unsuccessful. On December 19, 2006, Drew's Plumbing and the Furlongs filed Chapter 7 cases in this court. John A. Burdick, Jr. (the "Trustee") was assigned to serve as the Chapter 7 trustee in both cases.

Consistent with their claim that Donarumo was at fault for the failure of the Drew's Plumbing business and had breached personal obligations to them as well, the Furlongs listed on Schedule B – Personal Property ("Schedule B") in their individual bankruptcy case contingent and unliquidated "Claims for Breach of Contract (Andrew Donarumo et al.)" with an "Indeterminate" value. They also listed on Schedule B their 100% interest in Drew's Plumbing with an "Unknown" value. Similarly, on Schedule B in the Drew's Plumbing case, debtor Michael A. Furlong, as President of Drew's Plumbing, also listed contingent and unliquidated "Claims for Breach of Contract (Andrew Donarumo et al.)" with an "Indeterminate" value.

The Furlongs, individually and as the principals of Drew's Plumbing, cooperated with the Trustee as he conducted the administration of both bankruptcy cases. Although the description of the claims set forth in each of the respective Schedules B ("breach of

---

[1] The Furlongs allege that Drew's Plumbing failed because Donarumo "had a secret plan to compete against the business he was 'selling' (including by poaching former customers), and to one day take the business back for nothing." (Mot. to Verify 2). Donarumo responded that the Furlongs "ran the business into the ground. . . . Searching for scapegoats on which to pin blame for their own incompetence and mismanagement, the . . . [Furlongs] and Drew's . . . [Plumbing] conspired to assert causes of action against . . . Donarumo and other parties." (Cross Mot. 5). Notwithstanding these alternate versions of the Drew's Plumbing history, the cause of its demise is not material to the outcome here.

2

contract") was limited in scope, the Furlongs and the Trustee discussed the nature of all of the claims alleged to be held by the Furlongs and Drew's Plumbing against Donarumo at the § 341[2] meeting held on January 17, 2007 and/or thereafter. As a result of these discussions, the Trustee came to understand that the Furlongs and Drew's Plumbing might indeed have colorable claims against Donarumo beyond those based on mere breach of contract. In fact, the Furlongs, through their counsel, provided the Trustee with a copy of a draft complaint to aid in his investigation and exchanged various letters and e-mails detailing the nature of the alleged claims. With the possibility of value to estate identified, the Trustee contacted several attorneys and sought to retain one willing to pursue the claims on behalf of the two estates. However, the Trustee was unable to find an attorney (including, presumably, himself) willing to pursue the claims on the behalf of the estates on terms agreeable to him.

Meanwhile, the Furlongs became concerned that the statute(s) of limitations on the claims against Donarumo might expire before they were able to sue him in state court, and asked the Trustee to formally abandon the claims. But at the same time, the Trustee was embroiled in a dispute with the Furlongs about whether an amount of $5,000 held by the Furlongs in their individual bankruptcy case was exempt. A deal was then struck.[3] The

---

[2] Unless otherwise noted, all statutory references will be to Title 11 of the United States Code. 11 U.S.C. §§ 101, et seq.

[3] Although Donarumo urges the Court to view this exchange as an undisclosed settlement under Fed. R. Bankr. P. 9019(a), the Court declines to do so and finds Donarumo's accusations of a "kick-back" by the Furlongs to the Trustee distasteful and without foundation. This Court has no reason to question the Affidavit filed by the Trustee in this case on April 7, 2010 which characterized the transactions as separate. See Burdick Aff. ¶ 15, 16 ("The $5,000.00 payment was not paid in consideration of the abandonment of the Donarumo claims" and "There was no settlement of any claims or controversy with the Debtors."). There is no merit in Donarumo's argument that the Trustee sacrificed value in one estate for the benefit of another.

Furlongs would turn over these funds to the Trustee if he would expeditiously abandon the claims against Donarumo in both cases.

On October 26, 2007, the Trustee filed a No Asset and No Distribution Report (the "No Asset Report") in the Drew's Plumbing case. And on December 28, 2007, the Drew's Plumbing case was closed. As for the Furlongs' case, the Trustee filed a Notice of Intention to Abandon on November 6, 2007, which provided in relevant part:

> Notice is hereby given, pursuant to 11 USC 554 of the Bankruptcy Code that the Trustee of the above-named Debtor's estate intends to abandon *a cause of action against Andrew Donarumo, et al.*
>
> Reason for Abandonment: The Trustee has attempted to hire counsel to handle this matter on a contingency basis. The Trustee has contacted three attorneys, two of which have declined to represent the estate. The third attorney has indicated that his firm would accept employment on a fifty (50%) percent contingency basis. *The claim is based upon the Debtors' allegation that certain misrepresentation and other business related tort cause of action arose from the purchase of a business known as Drew's Plumbing and Heating, Inc. II*, This business has filed a Chapter 7 and the Trustee has filed a No Distribution Report. This matter is highly contested. The Trustee is currently holding $10,500.00. In the Trustee's business judgment, it appears that pursuing this litigation would not be cost effective for the estate. (emphasis added).[4]

No objections were filed by any party of interest, including Donarumo, and leave to abandon was authorized by this Court on November 30, 2007.

On January 10, 2008, the Furlongs and Drew's Plumbing filed suit against Donarumo and other parties in the Commonwealth of Massachusetts Superior Court Department of the Trial Court, Suffolk Division (the "Superior Court Action"), including

---

[4] The Court has not employed the term "sic" in the myriad of locations where it would have been appropriate so as not to *further* obfuscate the language of the so-called "Notice." Trustees ought to exercise care when filing notices of abandonment (and for that matter, any other paper) with the court to avoid precisely the problems which have here arisen.

claims for relief for breach of contract, deceit, breach of fiduciary duty, Mass. Gen. Laws ch. 93A violations, interference with advantageous business relationships, infliction of emotional distress, rescission and other equitable remedies – but notably all surrounding Donarumo's alleged failure to live up to his agreement relating to the sale of the assets of Donarumo Plumbing. From January 10, 2008 to date, the Furlongs have prosecuted that case, and Donarumo has not objected in this court until now.

An additional wrinkle is provided by the role of Drew's Plumbing's secured lender, Key Bank. On June 30, 2006, prior to the filing of both the individual and corporate bankruptcy cases, Drew's Plumbing voluntarily surrendered certain of its business assets to Key Bank; Key Bank, in turn, sold its collateral to a third party, Gem Plumbing. This collateral included "general intangibles." Although it had been argued both ways by various parties strategically throughout their disputes, it is unclear whether Gem Plumbing held the Drew's Plumbing rights against Donarumo all along. Accordingly and perhaps in reaction to a defense raised by Donarumo, the Furlongs took the following action, attempting to eliminate any uncertainty.

On February 13, 2010, Gem Plumbing assigned to the Furlongs and Drew's Plumbing any rights or interests which Gem Plumbing then held in the claims of Drew's Plumbing against Donarumo. And on February 27, 2010, the Furlongs conducted a meeting of the board of directors of Drew's Plumbing and assigned to themselves all of the rights and interests of Drew's Plumbing in the claims against Donarumo "[t]o reflect the reality that Drew's . . . [Plumbing] is a corporate 'shell' with no assets, and that . . . [the Furlongs] are the real parties in interest and are bearing the burdens and up front costs . . . in the Superior Court Action." (Mot. to Verify 6-7).

5

This alleged assignment was authorized at a board of directors meeting to which the Trustee, holding the Furlongs' rights as 100% shareholders, was not invited, nor was his authorization sought.  See Mot. to Verify, Ex. 9.  But see Mass. Gen. Laws ch. 156D, § 12.02 (2005) (providing that shareholder consent is required for sales of all or substantially all of the assets of a business corporation).

The filing by the Trustee of his Final Report and Account Before Distribution in this individual case on December 10, 2009 opened the current Pandora's Box. Before the scheduled hearing on the Final Report could take place, the Trustee moved to withdraw that account (which motion the Court subsequently allowed), informing the Court that:

> 4.  On January 26, 2010, the Trustee received an offer to purchase certain assets of the estate that being the stock of Drew's Plumbing . . . and all other personal claims owned by the Debtor [sic] against the former principle [sic] of Drew's [Plumbing], . . . Donarumo and/or . . . [Donarumo] Plumbing . . . for the sum of $5,000.00.
> 5.  The Trustee expects to pursue this offer and file a motion to sell the aforementioned assets.

(Mot. to Withdraw, ¶¶ 4, 5).

On March 12, 2010, the Furlongs filed the Motion to Verify, and Donarumo responded with the Cross Motion.  Creditor Murray Supply Co. ("Murray Supply") subsequently filed its Joinder in the Cross Motion and adopted all of Donarumo's positions.

II.    POSITIONS OF THE PARTIES

A.    The Furlongs

The Furlongs contend that the Trustee abandoned any claims which either they or Drew's Plumbing had against Donarumo. They maintain that the Trustee was apprised of and fully investigated those claims which were subsequently brought in their Superior Court

Action, sought to retain counsel, and ultimately elected to abandon all of the claims in both cases. The Debtors take particular note that no creditors, including Donarumo, objected to abandonment of the claims in either bankruptcy case and argue that they reasonably relied upon the abandonment, incurring substantial costs in the prosecution of the Superior Court Action. Finally, the Furlongs argue that the remaining value in the assets of Drew's Plumbing was inconsequential under § 554(a), and therefore their assignment of Drew's Plumbing's claims to themselves as individuals was permissible.

B.    <u>Donarumo and Murray Supply Corp.</u>[5]

Donarumo argues that the Motion to Verify is an attempt by the Furlongs to deprive creditors of a meaningful recovery in this case – a case in which they have already received their discharges. He maintains that claims that were not disclosed on the Furlong or Drew's Plumbing schedules could not have been abandoned and, therefore, are still estate assets available for purchase. With respect to the instant Furlong case, Donarumo argues that by the Notice of Intention to Abandon, the Trustee only sought to abandon some of the claims ultimately pursued by the Furlongs. The claims that were not clearly listed in the notice, maintains Donarumo, are still assets of the Furlongs' bankruptcy estate. Furthermore, Donarumo contends that Drew's Plumbing's assignment of claims against

---

[5] The Furlongs contend that Donarumo has no standing to object to the Motion to Verify in this case, primarily on the grounds that the claims had been long abandoned and equity should foreclose intervention at this point. Also, the Furlongs emphasize that Donarumo did not file a proof of claim in this case. However, Donarumo, as principal of Donarumo Plumbing, is listed on Schedule D – Creditors Holding Secured Claims. (A related entity also appears to be listed on Schedule F – Creditors Holding Unsecured Nonpriority Claims. Additionally, Donarumo, individually, and Donarumo Plumbing were listed as unsecured creditors in the Drew's Plumbing case.) As a creditor, Donarumo can always file a late proof of claim, 11 U.S.C. § 726(a)(3); the fact that he has not filed one yet does not erode his standing as a party in interest. In any event, Murray Supply joined with Donarumo's opposition and the Cross Motion. And no objection has been made to Murray Supply's standing.

7

Donarumo to the Furlongs individually was a violation of the automatic stay and, therefore, void.

In joining in the Cross Motion, Murray Supply has adopted all of Donarumo's positions.

    C.    <u>The Trustee</u>

On April 7, 2010, the Trustee filed an Affidavit and Response with this Court (the "Affidavit" and cited as "Burdick Aff."), attempting to clarify his position as it had been represented by the parties and in a previous affidavit he filed with the Superior Court. In the Affidavit, he emphasized his efforts to retain an attorney to pursue the claims "under terms that were favorable to the estate" – and once unable to do so, his determination that "given the highly contested nature of the litigation and the costs involved that the further prosecution of the Donarumo litigation was not cost effective for the estate." (Burdick Aff. ¶ 9). The Affidavit also outlined how the Trustee attempted successfully to leverage the Furlongs' concern about a running statute of limitations to gather funds for the estate in the individual case without litigation, and thus further cost, to creditors. (Burdick Aff. ¶ 11) ("At that time I made it clear to . . . [Furlongs' counsel] that I would not abandon anything unless his client[s] turned over the non-exempt funds in the Banknorth account.") The Trustee insists that "[t]he $5,000 payment was not paid in consideration of the abandonment of the Donarumo claims", and "[t]here was no settlement of claims or controversy with the . . . [Furlongs]." (Burdick Aff. ¶¶ 15, 16).

III.    DISCUSSION

    A.    <u>The No Asset Report in the Furlong Case</u>

Easily dismissed should be any notion that the filing by the Trustee of the No Asset Report in the Furlong case had any legal effect. The scheduled assets of Drew's Plumbing were abandoned by virtue of the closing of its Chapter 7 case, pursuant to § 554(c),[6] not by the filing of the No Asset Report. The filing of a No Asset Report by a Chapter 7 trustee has no independent legal significance and does not affect the rights of parties in interest. The filing of the document is merely a signal to the Court (and to the parties) that the Trustee has terminated his or her efforts to liquidate assets of the estate, no funds are available for distribution to creditors, and accordingly the Trustee has no objection to the case being closed.

    B.    <u>The Assets Abandoned by the Closing of the Drew's Plumbing Case</u>

Donarumo argues that because Schedule B in the Drew's Plumbing case disclosed only a breach of contract claim against Donarumo, that was the only claim that was capable of being abandoned by means of the closing of the case. Indeed, the First Circuit has held that "[t]he law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules, and that in order for property to be abandoned . . ., the debtor must formally schedule the property pursuant to 11 U.S.C. § 521(1) before the close of the case." <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 186 (1st Cir. 1995). <u>See</u> <u>also</u> <u>Robert v. Household Fin. Corp. (In re Robert)</u>, No. 09-4159, 2010 WL 2719983, at *6 (Bankr. D. Mass. July 7, 2010)

---

[6] Section 554(c) provides:

> Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

11 U.S.C. § 554(c).

9

("property that is not formally scheduled is not abandoned and therefore remains part of the estate"); Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 229 (D. Mass. 1996). But Jeffrey v. Desmond and its progeny only address the situation where a debtor has completely failed to schedule a claim, leaving the Chapter 7 trustee, creditors, and the court in the dark about a possible estate asset; and then elects to pursue the claim after receiving a bankruptcy discharge. That is hardly the case here.

The courts have generally agreed that if an asset is scheduled in a way that reasonably puts the trustee on notice of its existence and potential value, it may be abandoned under § 554(b). See Olson v. Aegis Mortg. Corp. (In re Bloxsom), 389 B.R. 52, 62 (Bankr. W.D. Mich. 2008); Kuehn v. Cadle Co., No. 5:04-cv-432-Oc-10GRJ., 2007 WL 809656, at *4 (M.D. Fla. Mar. 15, 2007) ("The Court has been unable to find any legal authority which explains the level of detail a debtor must include when listing assets on bankruptcy schedules . . . [and] [t]he statute does not provide any guidance as to the level of specificity required"); Bonner v. Sicherman (In re Bonner), No. 04-8101, 2005 WL 2136204, at *4 (B.A.P. 6th Cir. Sept. 6, 2005) (specifically finding debtors do not have to list every possible claim that may arise from a lawsuit on their schedules because "the Code does not require detail of this degree"); In re Mohring, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992) (discussing the specificity required in scheduling in another context the court stated "[t]here are, however, no bright-line rules for how much itemization and specificity is required. What is required is reasonable particularization under the circumstances.").

Here, the asset in question was sufficiently described in Schedule B to put the Trustee on notice that claims against Donarumo existed and that they had potential value for the Drew's Plumbing bankruptcy estate. It was the duty of the Furlongs to put the

Trustee on notice that such claims existed, and it was the Trustee's duty under § 704(a) to investigate. The Furlongs and the Trustee each met their responsibilities in that regard. The Drew's Plumbing Schedule B was sufficient to advise the Trustee that a dispute existed surrounding a contract in which Drew's Plumbing was involved, and the Furlongs went further to aid his investigation, even by drafting a proposed complaint. The law does not require, as Donarumo argues, that debtors list in their bankruptcy schedules every conceivable claim they may have against a third party. The only requirement is that debtors produce honest and accurate schedules that are specific enough to allow a trustee in bankruptcy to conduct an adequate investigation into their financial affairs. The language used in Drew's Plumbing's Schedule B was sufficient to meet that objective. Accordingly, all of the claims held by Drew's Plumbing against Donarumo and prosecuted in the Superior Court Action were eligible for abandonment and were indeed abandoned by the closing of the Drew's Plumbing case in 2007, pursuant to § 554(c).

    C.    <u>The Notice of Abandonment in this Case</u>

In the instant Furlong case, the issue before the Court is not what the Trustee impliedly abandoned, as in the closing of the Drew's Plumbing case, but what the Trustee explicitly abandoned under § 554(a). Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). A Chapter 7 trustee's intention as to what is being abandoned must be unambiguous. <u>See</u> <u>Chartschlaa v. Nationwide Mut. Ins. Co.</u>, 538 F.3d 116, 124 (2d Cir. 2008) (holding that a notice to abandon that was filed but on which the court never acted at the trustee's request was too ambiguous to constitute abandonment). The Trustee filed a Notice of Intention to

Abandon in the instant Furlong case and that notice was approved by this Court on November 30, 2007 after no objections were filed by any party of interest, including Donarumo.

Donarumo argues, however, that the Notice of Intention to Abandon is limited solely to the stated "misrepresentation and other business related tort cause of action." (Cross Motion ¶ 45), referring to the paragraph labeled "Reason for Abandonment" in the middle of the Notice of Intention to Abandon. Donarumo maintains that all of the Furlongs' other claims in the Superior Court Action, including those arising from contract, remain in the bankruptcy estate available for sale.

Again, the Notice of Intention to Abandon provided, in relevant part, as follows:

Notice is hereby given, pursuant to 11 USC 554 of the Bankruptcy Code that the Trustee of the above-named Debtor's estate intends to abandon a cause of action against Andrew Donarumo, et al.

Reason for Abandonment: The Trustee has attempted to hire counsel to handle this matter on a contingency basis. The Trustee has contacted three attorneys, two of which have declined to represent the estate. The third attorney has indicated that his firm would accept employment on a fifty (50%) percent contingency basis. The claim is based upon the Debtors' allegation that certain misrepresentation and other business related tort cause of action arose from the purchase of a business known as Drew's Plumbing and Heating, Inc. II, This business has filed a Chapter 7 and the Trustee has filed a No Distribution Report. This matter is highly contested. The Trustee is currently holding $10,500.00. In the Trustee's business judgment, it appears that pursuing this litigation would not be cost effective for the estate.

There is no question that the Notice of Intention to Abandon was drafted in gross violation of several well-settled rules of English grammar. However, as painful as it is to read, its meaning is unambiguous: *The estate holds claims against Donarumo and perhaps others, arising from the purchase of a business that came to be known as Drew's Plumbing; and the Trustee notices parties in interest of his intention to abandon those*

*claims based on his determination, made after investigation, that the claims have no or negligible value to the estate.* No more needed to be said, and no request for clarification was made by anyone, including Donarumo. Accordingly, all of the claims held by the Furlongs against Donarumo and prosecuted in the Superior Court Action were abandoned by virtue of the Trustee's Notice of Intention to Abandon, pursuant to § 554(a).

      D. <u>The Postpetition Transfer of the Claims Held by Drew's Plumbing to the Furlongs</u>

      Finally, there remains the legal effect, if any, of the transfer by Gem Plumbing to the Furlongs and to Drew's Plumbing of any rights that it might have had in the claims against Donarumo – and the subsequent transfer of the Drew's Plumbing rights to the Furlongs. Donarumo asserts that, upon their abandonment pursuant to Section 554(c), the Drew's Plumbing rights against Donarumo were revested in Drew's Plumbing, the stock of which is held by the Trustee and has never been abandoned. And the transfer of those rights from Drew's Plumbing to the Furlongs individually was void as a violation of the automatic stay under § 362(a).

      Section 554(c) provides that "*[u]nless the court orders otherwise*, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned *to the debtor* and administered for the purposes of section 350 of this title." 11 U.S.C. § 554(c) (emphasis added). Accordingly, when the Trustee abandoned the claims of Drew's Plumbing, they reverted back to Drew's Plumbing. However, notwithstanding the abandonment of those assets in the Drew's Plumbing case, the Trustee's interest in the stock of Drew's Plumbing, which he still holds in the Furlong case, was never abandoned. This fact remains undisputed by the parties. (Hr'g Tr. 38) (as the Furlongs' attorney admitted, "the shares are still estate property . . . as a technical

13

matter I agree.") The outcome is the same if Drew's Plumbing acquired claims against Donarumo only by virtue of the transfer of those claims to Drew's Plumbing by Gem Plumbing. Regardless of the manner of its acquisition, Drew's Plumbing held the claims against Donarumo while the Trustee held all of the stock interest in Drew's Plumbing.

Donarumo argues that the transfer of the claims against him held by Drew's Plumbing by and to the Furlongs constituted a violation of the automatic stay. This Court respectfully disagrees. The automatic stay with respect to the assets of Drew's Plumbing terminated by operation of law on December 28, 2007 when the Drew's Plumbing case closed. See 11 U.S.C. § 362(c)(1) and (2). And unless a corporation is itself a bankruptcy debtor, the automatic stay afforded to an individual debtor under § 362(a) does not extend to the assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock. Kreisler v. Goldberg, 478 F.3d 209, 213-14 (4th Cir. 2007); Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1205-06 (3d Cir. 1991); In re Winer, 158 B.R. 736, 743 (N.D. Ill. 1993); Pers. Designs, Inc. v. Guymar, Inc., 80 B.R. 29, 30 (E.D. Pa. 1987); In re Calhoun, 312 B.R. 380, 384 (Bankr. N.D. Iowa 2004); In re Johnson, 209 B.R. 499, 500-01 (Bankr. D. Neb. 1997).

Nevertheless, there may yet be value in the stock of Drew's Plumbing. If the transfer of the claims from Drew's Plumbing to the Furlongs was made for less than reasonably equivalent value (which, at least facially, appears to have happened) and at a time when Drew's Plumbing was insolvent (which seems almost certainly the case since Drew's Plumbing did not and could not receive a bankruptcy discharge in a Chapter 7 case), then the stockholder of Drew's Plumbing (the Trustee) may have a derivative claim against the Furlongs on the basis that the Furlongs received a fraudulent transfer from Drew's

14

Plumbing under state law.  In addition, there remain important questions under state law as to the voidability of the transfer of what appears to have been Drew's Plumbing's only remaining asset (the claims against Donarumo) without stockholder (the Trustee's) consent.

Pun aside, this Court need not plumb the depths of the value of the Trustee's stock interest in Drew's Plumbing, regardless of whether it was derived from the abandonment of the claims against Donarumo by the closing of the Drew's Plumbing case or from the transfer of those claims from Gem Plumbing who purchased them from Key Bank.  It is enough to say that the stock of Drew's Plumbing remains property of the Furlong estate and may very well include the right to recover the value of Drew's Plumbing's claims against Donarumo.

IV.    CONCLUSION

Each of the motions before the Court will be ALLOWED in part and DENIED in part, with the Court finding and ruling that:

1. the claims held by the Furlongs and Drew's Plumbing were duly abandoned, pursuant to 11 U.S.C. § 554; and

2. the stock in Drew's Plumbing owned by the Furlongs remains property of the estate, vested in the Trustee.

Separate orders consistent with this Memorandum will issue accordingly.

DATED:   September 28, 2010

By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge